```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ELBA N. CRUZ as Administratrix and Administratrix ad prosequendum of the Estate of ANIBAL CRUZ a/k/a ANIBAL CRUZ, JR., a minor, deceased, and ELBA N. CRUZ, individually,<br><br>      Plaintiff,<br><br>      v.<br><br>CITY OF CAMDEN, et al.,<br><br>      Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 06-1809 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Paul D. Brandes, Esq.
VILLARI, KUSTURISS, BRANDES & KLINE, PC
4101 Route 42 South, Suite C
Turnersville, NJ 08012
    Counsel for Plaintiff Elba Cruz

Francis X. Donnelly, Esq.
Robert J. Gillispie, Jr., Esq.
MAYFIELD, TURNER, OMARA, DONNELLY & MCBRIDE, PC
2201 Route 38, Suite 300
Cherry Hill, NJ 08002
    Counsel for Defendants Township of Cherry Hill and Police
    Officer Gary Cundiff

**SIMANDLE**, District Judge:

    This action arises out of the tragic deaths of three young boys, including Anibal Cruz, the son of Plaintiff Elba Cruz, who disappeared while playing outside of Anibal's home in Camden, New Jersey. Various law enforcement agencies and officers, including Officer Gary Cundiff of the Cherry Hill Police Department, searched for the missing children. Approximately two days after

they disappeared, a relative discovered the boys in the trunk of a car parked in the yard at Anibal's home. The boys were dead on discovery.

The matter is presently before the Court on an unopposed[1] motion filed by Defendants Cherry Hill Township and Officer Gary Cundiff of the Bloodhound Tracking Unit, seeking summary judgment on Plaintiff's federal civil rights claims and state law tort claims [Docket Item 175]. Discovery has concluded and this motion is unopposed. The Court, taking the undisputed facts as true and for the reasons discussed below, concludes that no reasonable fact-finder could find that Officer Cundiff's conduct was negligent or shocks the conscience. Therefore, the Court will grant summary judgment in favor of both Cherry Hill and Officer Cundiff on Plaintiff's claims under 42 U.S.C. § 1983 and her state law tort claims. Defendants Cherry Hill and Officer Cundiff have not sought summary judgment on Plaintiff's claims under the New Jersey Constitution and the New Jersey Civil Rights Act, N.J. Stat. Ann. §§ 10:6-1, 6-2 and so the Court will not

---

[1] It appears that Plaintiff has abandoned her claims against Officer Cundiff and Cherry Hill. All other defendants have moved for summary judgment and Plaintiff has opposed those other motions [Docket Items 158, 176, 178, 189, 190, 191]. In addition, Plaintiff has moved for partial summary judgment against Defendants Lt. Nicole Martin, the City of Camden, the City of Camden Police Department, the County of Camden, and Camden County's Prosecutor's Office [Docket Item 159]. Those other motions are opposed and have been temporarily stayed while the litigants pursue a mediated settlement.

grant summary judgment on those claims at this time.

## I.   BACKGROUND

### A.   Undisputed Facts

On June 22, 2005 at approximately 8:25 p.m., the Camden Police Department received a 911 emergency call reporting the disappearance of Anibal Cruz, age 11, Daniel Agosto, age 6, and Jesstin Pagan, age 5, at 957 Bergen Avenue in Camden, New Jersey. (Defs. Statement of Uncontested Fact ¶ 1.)  Camden Police Department officers arrived on the scene shortly thereafter and learned that the boys had been missing for up to three hours. (Id. ¶¶ 2-3.)  The first two arriving Camden Police Department officers, Lt. Martin and Officer Pimental, performed the initial search of the house and grounds of 957 Bergen Avenue, including the Toyota Camry parked in the yard.  (Id. ¶¶ 4-5.)  Officer Pimental told Detective Tyree Nobles of the Camden Police Department that the Toyota was "clear."  (Id. ¶¶ 6-8.)  Later that night the Camden Police Department performed a second search of the house and grounds at 957 Bergen Avenue, during which search a police officer looked in the Toyota and banged on the trunk, but did not open the trunk.  (Id. ¶¶ 9-10.)

On the morning of June 23, 2005, Officer Cundiff, at the request of the Camden Police Department, volunteered the services of himself and his bloodhound, Daisy, to assist in the search for the missing boys.  (Id. ¶ 12.)  Officer Cundiff and Daisy were

3

certified as a Canine Tracking Team in October, 2002 after successfully completing a required course. (Id. ¶ 25.) They subsequently were successfully re-evaluated in 2003, and engaged in 40 hours of continuing education each year from 2003 through 2005. (Id.) At approximately 10:30 a.m. Officer Cundiff arrived at 957 Bergen Avenue and then reported to the command post headed by Captain Cassandra Smith. (Id. ¶¶ 12-14.) Captain Smith told Officer Cundiff that the boys had last been seen at between approximately 5:00 p.m. and 5:30 p.m. (Id. ¶ 14.) Officer Cundiff explained that "the presence of persons in the search area could have the effect of contaminating the scene and adversely affect the ability of Daisy to track a scent of the missing boys." (Id. ¶ 16.) Plaintiff's law enforcement experts, Ken Katsaris and James Williams, similarly opined that appropriate control of the crime scene and limiting people who access the scene at an early stage is important to the success of a K-9 tracking mission. (Id. ¶¶ 26-27, 30-31.)

After being briefed by Captain Smith, Officer Cundiff returned to 957 Bergen Avenue to get a clothing item with Anibal Cruz' scent to give to Daisy. (Id. ¶ 20.) Officer Cundiff obtained a pair of urine soaked pants, scented Daisy in front of 957 Bergen Avenue and began a search following Daisy. (Id. ¶ 22.) Officer Cundiff and Daisy engaged in several unsuccessful searches over the next two days, in which Daisy attempted

unsuccessfully to track the boys' scents.  (Id. ¶ 23.) Plaintiff's expert Mr. Katsaris opined that "[t]his failure was probably due to the lack of sealing the perimeter of the area where the kids were last seen by the Camden Police officers." (Id. ¶ 27.)  Neither of Plaintiff's two experts criticized any aspect of Officer Cundiff's conduct during the search for the missing boys nor do they criticize the Township of Cherry Hill. (Id. ¶¶ 24, 28, 29.)

### B. Procedural History

On March 24, 2006, Plaintiff filed a complaint in the Superior Court of New Jersey, Camden County, alleging violations of the United States Constitution, pursuant to 42 U.S.C. § 1983, the New Jersey Constitution, pursuant to N.J. Stat. Ann. §§ 10:6-1, 6-2, and various negligence and intentional torts under the New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 to 12-3, and the New Jersey Wrongful Death Act, N.J. Stat. Ann. §§ 2A:31-1 to - 6.  On April 19, 2006, Defendants removed the action to this Court.  After over three years of discovery and non-dispositive motion practice, all defendants filed motions for summary judgment and Plaintiff filed a motion for partial summary judgment against Defendants Lt. Nicole Martin, the City of Camden, the City of Camden Police Department, the County of Camden, and Camden County's Prosecutor's Office.  Plaintiff opposed all defense motions for summary judgment except the

5

present motion filed by Defendants Cherry Hill Township and Officer Cundiff.  The Court will now turn its attention to this unopposed motion.

**II.  DISCUSSION**

   **A.   Standard of Review**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered."  U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

>     existence of an element essential to that
>     party's case, and on which that party will
>     bear the burden of proof at trial. In such a
>     situation, there can be "no genuine issue as
>     to any material fact," since a complete
>     failure of proof concerning an essential
>     element of the nonmoving party's case
>     necessarily renders all other facts
>     immaterial.

Celotex, 477 U.S. at 323.

In the present case, Plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (holding that a local rule deeming unopposed motions to be conceded did not justify the grant of summary judgment without analysis under Rule 56(e), Fed. R. Civ. P.). The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is "appropriate," as required by Rule 56(e), Fed. R. Civ. P. In order to grant Defendants' unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law." Id. Additionally, pursuant to Local Civil Rule 56.1(a), Defendants' statement of material facts not in dispute are deemed undisputed for the

7

purposes of this summary judgment motion.

### B.  Federal Civil Rights Claims

The moving defendants argue that there is no evidence from which a reasonable fact-finder could find that Officer Cundiff, or the municipality of Cherry Hill, violated Plaintiff's constitutional rights when Officer Cundiff failed to find the missing boys, and so summary judgment is required on Plaintiff's due process claims under 42 U.S.C. § 1983.  In particular, the moving defendants maintain that no jury could find that Officer Cundiff's conduct met the four prongs of a state-created danger due process violation.[2]  The Court, having reviewed the evidence offered by the moving defendants and the undisputed facts and for the reasons discussed below, finds that no reasonable fact-finder could find that Officer Cundiff or Cherry Hill Township acted with a degree of culpability that shocks the conscience and so will grant Defendants summary judgment on Plaintiff's federal civil rights claims.

It is well-established that the due process clause does not, as a general rule, create an affirmative obligation on the

---

[2] The moving defendants point out that Plaintiff's complaint does not explicitly identify the constitutional violation alleged, but they assume that the only plausible claim for relief against Officer Cundiff and Cherry Hill would be one under the doctrine of state-created danger.  Plaintiff has not opposed this interpretation of her complaint and the Court will not, on an unopposed motion, read more into her complaint than what is clear on its face.  See Fed. R. Civ. P. 8.

government.  DeShaney v. Winnebago County DSS, 489 U.S. 189, 195 (1989); Phillips v. Country of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008); Kaucher v. County of Bucks, 455 F.3d 418, 431 (3d Cir. 2006).  As the Supreme Court explained in DeShaney, "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  489 U.S. at 195.

One exception to the rule that the due process clause of the Fourteenth Amendment does not impose affirmative obligations -- the exception on which Plaintiff relies -- is when the state has created or enhanced the danger which ultimately injures the challenger.[3]  Phillips, 515 F.3d at 235.  To establish a claim under the state-created danger theory, a plaintiff must establish the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more

---

[3] Another exception applies to persons held in state custody.  DeShaney, 489 U.S. at 199-200.  Anibal Cruz was not in state custody when he disappeared and consequently this exception does not apply.

> vulnerable to danger than had the state not acted at all.

Kaucher, 455 F.3d at 431 (citing Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir.2006)).

With regard to the second prong, whether behavior rises to the level of conscience-shocking will depend upon the facts of each individual case. County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998); Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006). The Third Circuit has articulated three levels of culpability that are applied depending on the amount of time the state actor had for deliberation. The highest level of culpability, intent to cause harm, is required in a "hyperpressurized environment" where "split-second" decisions must be made. Sanford, 456 F.3d at 309. The middle level of culpability, disregard of a great risk of serious harm, is required for "situations in which there is some urgency and only 'hurried deliberation' is practical." Id. at 309-10. The lowest level of culpability, deliberate indifference or disregard of a substantial risk of serious harm, is required in "cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." Id. at 309-10. Mere negligence is never sufficient for conscience-shocking behavior. Schieber v. City of Philadelphia, 320 F.3d 409, 419 (3d Cir. 2003).

In the present case, the Court finds that there is no

evidence from which a reasonable fact-finder could find that Officer Cundiff or Cherry Hill behaved in a manner that shocks the conscience.  Under the facts of this case, it is evident that while Officer Cundiff may not have been operating in a hyperpressurized environment in which split-second decisions were necessary, there was certainly much urgency in his search for the missing boys, who had already been missing for many hours when he voluntarily joined the search.  Mr. Katsaris emphasized "the unique danger every extended minute presents when a child is missing."  (Defs. Exh. A at 11.)  Plaintiff was consequently required to offer evidence from which a reasonable fact-finder could find that Officer Cundiff disregarded a great risk of serious harm.  See Sanford, 456 F.3d at 309.  Plaintiff has failed to present such evidence.  Instead the evidence shows that Officer Cundiff arrived at the scene, promptly reported to the command post where he learned that the home and premises had already been repeatedly and thoroughly searched, and then proceeded to follow Daisy as she searched for the boys' scents.  Upon these facts, and in the absence of any expert report criticizing Officer Cundiff's conduct, no fact-finder could find that such conduct showed a disregard for the safety of the boys.  In fact, as will be discussed below, the present record fails to suggest even mere negligence.  Consequently, without addressing the remaining prongs of the state-created danger analysis, the

11

Court concludes that Officer Cundiff is entitled to summary judgment on Plaintiff's federal civil rights claims.

The Court having found that Officer Cundiff is entitled to summary judgment on Plaintiff's federal civil rights claims, the Court must similarly grant summary judgment to Cherry Hill Township on Plaintiff's federal civil rights claims. To the extent that Plaintiff alleged that Cherry Hill committed some constitutional injury independent of Officer Cundiff's conduct (either by failing to train Officer Cundiff or by failing to implement proper procedures for finding lost children), the record is entirely void of evidence to support such a claim. The record shows only that Officer Cundiff and Daisy receiving training, without any evidence to suggest that such training was somehow deficient. There is no evidence at all regarding Cherry Hill Township's missing children procedures, or the absence of such procedures. Consequently, the Court will grant Defendant Cherry Hill summary judgment on Plaintiff's federal civil rights claims.

    **C.**   **New Jersey Tort Claims**

Defendants Cherry Hill and Officer Cundiff seek summary judgment on Plaintiff's state tort claims on the grounds that they are entitled to immunity. They further argue that Plaintiff cannot recover damages because she has failed to meet the medical expenses threshold set forth in N.J. Stat. Ann. § 59:9-2(d). The

12

Court finds, however, that it need not address these issues because Plaintiff has failed to submit evidence necessary to prove even negligence.  Specifically, and for the reasons below, the Court finds that expert testimony regarding the level of care of an officer in the bloodhound unit arriving at a contaminated scene and Officer Cundiff's breach thereof, if any, was necessary to prove negligence here.  Plaintiff has failed to submit such expert evidence and the Court concludes that on the present record, such a failure defeats Plaintiff's state tort claims against Officer Cundiff and Cherry Hill.

"The test of negligence is whether the reasonably prudent person at the time and place should recognize and foresee an unusual risk or likelihood of harm or danger to others."  Scully v. Fitzgerald, 843 A.2d 1110, 1117 (N.J. 2004); Rappaport v. Nichols, 156 A.2d 1, 8 (N.J. 1959).  Often, the standard of care governing this reasonably prudent person in their particular circumstances is readily identifiable by the average juror and so expertise is not needed.  "[W]here the evidence suggests to people of ordinary intelligence what the standard of care is, or what the deviation from that standard is, or both, juries have been allowed to determine that standard or deviation regardless of the absence of expert testimony."  Klimko v. Rose, 422 A.2d 418, 422 (N.J. 1980).  However, expert testimony is essential when "the matter to be dealt with is so esoteric that jurors of

13

common judgment and experience cannot form a valid judgment." Butler v. Acme Markets, Inc., 445 A.2d 1141, 1147 (N.J. 1982). Such testimony is often required "in cases involving professional competence." Lesniak v. County of Bergen, 563 A.2d 795, 805 (N.J. 1989).

In the present case, the level of care of a police officer in a bloodhound unit who arrived at an already contaminated scene knowing that the area had already been repeatedly searched is beyond the common judgment and experience of the layperson and this Court. Without any evidence of an obvious error, expert testimony is necessary to establish negligence. The Court cannot determine what, if anything, Officer Cundiff should have done differently to find the boys in the trunk of the Toyota before they died and the Court cannot expect a jury to so determine. The level of care under these circumstances requires a degree of technical knowledge and expertise not possessed by the average juror and so expert testimony was required to show that Officer Cundiff deviated from that standard of care. See McKinney v. East Orange Mun. Corp., 666 A.2d 191 (N.J. Super. Ct. App. Div. 1995) (use of expert testimony was necessary because the average citizen has no experience with police techniques and methods), cert. denied, 673 A.2d 277 (1996); Giantonnio v. Taccard, 676 A.2d 1110, 1115-16 (N.J. Super. Ct. App. Div. 1996) (expert testimony required to show negligence is arranging a funeral

14

procession, where "the safe conduct of a funeral procession constitutes a complex process involving assessment of a myriad of factors"); see also Shutka v. Pennsylvania R. Co., 181 A.2d 400, 409 (N.J. Super. Ct. App. Div. 1962) (expert testimony generally necessary to show precautions required at railroad crossing). Plaintiff's failure to offer any expert evidence regarding Officer Cundiff's conduct or the standard of care for an officer in his position is consequently fatal to Plaintiff's tort claims against Officer Cundiff.  As previously discussed, there is no evidence of any kind regarding the conduct of Cherry Hill independent from Officer Cundiff, and so summary judgment of Plaintiff's tort claims against Cherry Hill must also be granted.

    **D.**   **New Jersey Constitutional Claims**

In addition to Plaintiff's federal civil rights claims and her state tort claims, Plaintiff has asserted claims under the New Jersey Constitution, pursuant to the New Jersey Civil Rights Act, N.J. Stat. Ann. §§ 10:6-1, 6-2.  (Compl. ¶¶ 107-16.)  The moving defendants have not sought summary judgment on this claim and the Court will not, without briefing from any party, grant summary judgment on Plaintiff's state constitutional claims against Cherry Hill and Officer Cundiff.  The Court will nevertheless provide Defendants Cherry Hill and Officer Cundiff with an opportunity to seek summary judgment or voluntary dismissal of this one remaining claim.

**III. CONCLUSION**

For the foregoing reasons, the Court will grant summary judgment in favor of Defendants Officer Cundiff and Cherry Hill Township on Plaintiff's federal civil rights claims and state law tort claims.  The Court will further provide Defendants Officer Cundiff and Cherry Hill Township with an opportunity to file a dispositive motion as to Plaintiff's remaining state constitutional claims.  The accompanying Order shall be entered.


**November 12, 2009**                           **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                United States District Judge